UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ADB COMPANIES, LLC | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | Case No.     4:26-cv-00491-CMS |
|     vs. | ) | |
| | ) | |
| DENCA CONSTRUCTION, LLC, | ) | |
| BURLINGTON INSURANCE | ) | |
| COMPANY, and FEDERATED | ) | |
| MUTUAL INSURANCE COMPANY, | ) | |
| | ) | |
|     Defendants. | ) | |

## **FIRST AMENDED COMPLAINT**

COMES NOW Plaintiff ADB Companies, LLC, by and through its undersigned counsel, and pursuant to FED. R. CIV. P. 15(a)(1)(B), files its First Amended Complaint as a matter of course within twenty-one (21) days of Burlington Insurance Company's April 3, 2026 Motion to Dismiss per Rule 12(b)(2), stating to the Court as follows:

1.    Plaintiff ADB Companies, LLC ("Plaintiff" or "ADB") is a Missouri limited liability company with its principal place of business in Pacific, St. Louis County, Missouri.  Plaintiff is in the business of constructing utility, electrical and fiber optic infrastructure throughout the United States.  To do so, ADB enters into contracts with Owners of infrastructure projects and also enters into sub-contracts with various subcontractors.

2.    Defendant Denca Construction, LLC ("Denca") is a New Mexico limited liability company with its principal place of business in Rio Rancho, New Mexico.  Denca is in the business of installation of conduit.

1

3.     Upon information and belief, Defendant Burlington Insurance Company ("Burlington") is a North Carolina insurance company registered to do business in the State of Missouri, in good standing, with its principal place of business in Hartford, Connecticut.

4.     Burlington is registered with the Missouri Department of Commerce and Insurance to do business in Missouri as an insurance company.  Pursuant to MO. REV. STAT. §§ 375.906 and/or 375.256, Burlington can be and has been served with process in this case via the Director of that Department.

5.     Upon information and belief, Defendant Federated Mutual Insurance Company ("Federated" or "Federated Mutual") is a Minnesota insurance company registered to do business in the State of Missouri, in good standing, with its principal place of business in Owatonna, Minnesota.

6.     Federated is registered with the Missouri Department of Commerce and Insurance to do business in Missouri as an insurance company.  Pursuant to MO. REV. STAT. §§ 375.906 and/or 375.256, Federated can be and has been served with process in this case via the Director of that Department.

7.     Jurisdiction and venue are proper in this Court pursuant to MO. REV. STAT. § 506.500.

**GENERAL ALLEGATIONS**

**Master Subcontract Agreement**

8.     On or about April 18, 2019, ADB and Denca entered into a Master Subcontract Agreement ("Subcontract Agreement" or "Subcontract"), pursuant to which Denca agreed to perform certain work for and on behalf of ADB pursuant to purchase orders to be issued

by ADB, and in return for completing the purchase orders in a satisfactory manner Denca would receive payment for the work and materials used.  *See* **Exhibit 1**, which is a true and correct copy of the fully-executed Subcontract Agreement is attached hereto and incorporated herein by this reference.

9.      Pursuant to Section 9.3 of the Subcontract Agreement, ADB has the right at any time to elect to proceed with a lawsuit in the Circuit Court of St. Louis County, Missouri, and not mediate any disputes, controversy, and/or claims by and between Contractor and Subcontractor. Further under this section, the parties agreed that any court action or mediation will occur in St. Louis County, Missouri.

10.     Pursuant to Section 1.2 of the Subcontract Agreement, Denca was to furnish all labor and materials to perform conduit installation as specified in purchase orders issued by ADB.

11.     Pursuant to Section 6 of the Subcontract Agreement, Denca was to perform its services in a manner that was satisfactory to ADB, the Owner of the project and the Architect or Engineer for the project.

12.     Pursuant to Section 5.1 of the Subcontract Agreement, Denca agreed to indemnify and hold harmless ADB from and against all claims, damages, losses, and expenses, including but not limited to attorneys' fees arising out of or resulting from the performance or failure in performance of Subcontractor's work under this agreement provided that any such claim, damage, loss, or expense (1) is attributable to bodily jury, sickness, disease, or death, or to injury to or destruction of tangible property including the loss of use resulting there from, (2) is caused in whole or part, by any negligent act or omission of Subcontractor or anyone directly or indirectly employed by Subcontractor, or anyone for whose acts

3

Subcontractor may be liable, regardless of whether caused in part by a party indemnified hereunder.

13. The Subcontract (Exhibit A to Exhibit 1) requires Denca to add ADB as an additional insured on the Burlington Policy (defined below) and the Federated Policy (defined below).

14. Upon information and belief, Denca caused ADB to be listed as an additional insured on the Burlington and Federated insurance policies.

15. Burlington provided Denca with a commercial general liability policy from April 10, 2020 to April 10, 2021, Policy No. 250B00781 (the "Burlington Policy"), which listed ADB as an additional insured.

16. On information and belief, this Burlington Policy expressly provided that Burlington also insured the following persons or entities as additional insureds:

> Any person or organization with whom you have agreed, in a written contract, that such person or organization should be added as an additional insured on your policy, provided such written contract is fully executed prior to an occurrence in which coverage is sought under this policy.

17. On information and belief, the Burlington Policy did not exclude coverage of Missouri persons, entities, or risks.

18. Federated provided Denca with a commercial general liability policy from February 1, 2024 to February 1, 2025, Policy No. 1884083 (the "Federated Policy"), which listed ADB as an additional insured.

**Ramos Suit**

19.     Pursuant to the Subcontract, ADB hired Denca to place underground telecommunications conduit in Albuquerque, NM, including via PO No. 00-1892, which was awarded to Denca.  *See* **Exhibit 2**.

20.     Denca provided proof of work via "redlines" (*i.e.*, colored lines on maps showing where work was completed) and photographs of work in the area. *See* **Exhibit 3**.

21.     As part of the work, and as shown in the photographs, Denca created peering locations in the pavement (i.e, "potholes") to direct its subsurface installation of conduit at the intersection of Tierra Pintada Blvd., NW and Parkwest Dr., NW in Albuquerque, NM (the "Site"), and then closed/patched those potholes.

22.     On or about June 2, 2020, Mr. Antonio Ramos ("Mr. Ramos") was injured when he stepped through Denca's defective pothole repair that collapsed at the Site ("Ramos Claim").

23.     Mr. Ramos brought suit against Plaintiff, ADB's customer Verizon, and Denca for substantial damages resulting from his injuries caused by Denca's pothole repairs.  *See* **Exhibit 4**.

24.     Ramos received a default judgment against Denca in New Mexico state court.  *See* **Exhibit 5**.

25.     At the very latest, Burlington was notified of the Ramos lawsuit on April 15, 2024. *See* **Exhibit 15**.

26. On September 18, 2024, ADB's counsel contacted Burlington and reminded them of the upcoming mediation in the Ramos lawsuit, asking if they intended to participate in that mediation. (Ex. 15.)

27. Burlington failed or refused to participate in that mediation, defend ADB, and/or indemnify ADB in the Ramos lawsuit.

28. On information and belief, Burlington's failure or refusal was done despite language in the Burlington Policy granting Burlington the exclusive right to contest or settle any claim and prohibiting an insured from voluntarily assuming any liability without Burlington's consent.

29. ADB settled the Ramos suit on behalf of itself and Verizon and received an assignment from Ramos of his default judgment against Denca.

30. On August 29, 2025, ADB, by its Missouri counsel, demanded or requested Denca and Burlington reimburse ADB its settlement and legal costs.  (Ex. 15.)

31. Burlington requested additional information and documents from ADB's Missouri counsel on September 16, 2025, which said counsel provided to Burlington on October 28 and November 4, 2025.

32. By correspondence to ADB's Missouri counsel on December 8, 2025, Burlington denied ADB's claims for defense costs and indemnity.

33. Burlington denied ADB was an additional insured, even though their policy/endorsement automatically makes ADB an additional insured where Denca has contracted in writing to do so as it did in the Subcontract. Burlington gave no just reason as

to why it was denying ADB's claim and/or why it claimed ADB was not an additional insured under the Burlington Policy.

## Lumen Claim

34.     On or about February 20, 2024, Plaintiff hired Denca to place approximately 26,000 linear feet of fiber optic cable for Lumen Technologies ("Lumen") in El Paso, Texas, which fiber optic cable was owned by Lumen.

35.     Shortly after Denca installed Lumen's fiber optic cable, Plaintiff was informed by Lumen that Denca failed to follow appropriate industry standards for the handling and care of fiber optic cable during its installation and negligently or accidentally damaged Lumen's cable (the "Lumen Incident").  *See* **Exhibit 6**.

36.     Subsequent to the notification to Plaintiff, Lumen performed Optical Time Domain Reflectometry ("OTDR") or other similar testing on the fiber optic cable installed by Denca.

37.     Lumen's testing found that the fiber optic cable installed by Denca was defective, with indicators that there was excessive reflection or loss within the cable.

38.     As a result of its findings, Lumen demanded that Plaintiff replace the fiber optic cable and reimburse Lumen for the cost of the new cable and other related charges incurred by Lumen ("Lumen Claim").

39.     After verifying Lumen's complaints about the fiber optic cable installed by Denca, Plaintiff hired Via Technology, LLC ("Via Technology") to remove a portion of the defective fiber optic cable installed by Denca.

7

40.    Following the removal of the defective fiber optic cable, on or about June 1, 2024, Plaintiff hired Riggs Utility Specialist ("Riggs") to install the new fiber optic cable. Lumen hired flaggers for the removal and replacement of the defective fiber optic cable.

41.    ADB's costs to correct Denca's defective work was $130,859.74.

## COUNT I: BREACH OF CONTRACT (AGAINST DENCA – RAMOS SUIT)

42.    Plaintiff re-alleges and incorporates by reference the allegations above, in relevant part, as if set forth fully herein.

43.    During the pendency of the *Ramos* lawsuit, Plaintiff demanded that Denca and its insurer Burlington indemnify and defend ADB and its customer, Verizon. *See* **Exhibit 7**. Defendant Denca never agreed to do so.

44.    ADB also demanded that Denca and its insurer participate in the mediation of the Ramos suit. *See* **Exhibit 8**. Defendant Denca never agreed to do so.

45.    ADB settled the lawsuit in mediation and has demanded Denca and its insurer reimburse ADB its costs to settle the case, and its legal costs. Denca has refused to do so.

46.    Pursuant to Section 5 of the Subcontract Agreement, in relevant part, Denca agreed to indemnify and defend ADB from and against all claims that were caused in whole or part by any negligent act or omission of Denca or any of its employees or agents.

47.    Denca refused and continues to fail to honor its Subcontract Agreement with Plaintiff.

48.    Thus, Denca has breached the Subcontract Agreement by:

a.      Failing or refusing to indemnify and reimburse ADB for the damages incurred as a result of Denca's negligent actions as aforesaid; and/or

b.      Failing or refusing to tender ADB's claim to Burlington for defense and/or indemnity; and/or

c.      Failing or refusing to obtain defense and/or indemnity from Burlington of ADB's claim.

49.    As a result of the damages caused by Denca, ADB paid settlement and defense costs totaling $245,917.37 in the Ramos matter.

50.    As a direct and proximate result of Denca's actions as aforesaid, ADB has suffered damages in an amount to be proven at trial. In addition, ADB has incurred and will continue to incur attorneys' fees and costs as a result of Denca's breach of contract.

## COUNT II: BREACH OF CONTRACT (AGAINST DENCA – LUMEN CLAIM)

51.    Plaintiff re-alleges and incorporates by reference the allegations in Paragraphs 1-13 and 22-29 above, in relevant part, as if set forth fully herein.

52.    Plaintiff has demanded that Denca pay for its damages caused by Denca's negligent actions involving Lumen, as described above, or alternatively that Denca tender the claim to its insurer and indemnify Plaintiff.

53.    Pursuant to Section 5 of the Subcontract Agreement, in relevant part, Denca agreed to indemnify Plaintiff from and against all claims that were caused in whole or part by any negligent act or omission of Denca or any of its employees or agents.

54.     Denca refused and continues to fail to honor its Subcontract Agreement with Plaintiff.

55.     Thus, Denca has breached the Subcontract Agreement by:

a.      Failing or refusing to indemnify and reimburse Plaintiff for the damages incurred as a result of Denca's negligent actions as aforesaid; and/or

b.      Failing or refusing to tender ADB's claim to Federated Mutual for defense and/or indemnity; and/or

c.      Failing or refusing to obtain defense and/or indemnity from Federated Mutual of ADB's claim.

56.     As a result of the damages caused by Denca, Plaintiff has incurred costs and expenses in the amount of $130,859.74, which consists of paying Via Technologies $8,787.60 to remove damaged fiber, *see* **Exhibit 9**, paying Riggs $14,905.00 to install replacement fiber, *see* **Exhibit 10**, providing Lumen with a $52,190.00 new fiber credit and $12,039.51 for railroad flagging fee credit, *see* **Exhibit 11**, and paying additional internal costs of $42,937.63. S*ee* **Exhibit 12**.

57.     As a direct and proximate result of Denca's actions as aforesaid, Plaintiff has suffered damages in an amount of to be proven at trial. In addition, Plaintiff has incurred and will continue to incur attorneys' fees and costs as a result of Denca's breach of contract.

## COUNT III: BREACH OF CONTRACT (AGAINST BURLINGTON)

58.     Plaintiff re-alleges and incorporates by reference the allegations above, in relevant part, as set forth fully herein.

59.     Burlington agreed to provide insurance to Denca and Plaintiff, as an additional insured, in exchange for payment of money under a commercial general liability policy, Policy No. 250B007811. Plaintiff demanded that Burlington defend and indemnify it for the damages caused by its insured Denca's actions against Mr. Ramos, as described above.

60.     Burlington failed or refused to pay ADB's covered loss and/or indemnify Plaintiff and provide Plaintiff a defense in the Ramos action in accordance with the Policy, each of which constitutes a breach of contract.

61.     Burlington has breached Policy No. 250B007811 by:

a.     Failing and refusing to indemnify and reimburse Plaintiff for its damages incurred as a result of Denca's negligent actions as aforesaid;

b.     Failing and refusing to defend Plaintiff in the *Ramos* action.

62.     As a result of the damages caused by Denca, ADB paid settlement and defense costs totaling $245,917.37 in the Ramos matter.

63.     As a direct and proximate result of Burlington's breach of contract as aforesaid, Plaintiff has suffered damages in an amount to be proven at trial. In addition, Plaintiff has incurred and will continue to incur attorneys' fees and costs as a result of Burlington's breach of contract.

## COUNT IV: VEXATIOUS REFUSAL (AGAINST BURLINGTON)

64.     Plaintiff re-alleges and incorporates by reference the allegations above, in relevant part, as set forth fully herein.

65.     At all pertinent times, Burlington was a general liability insurer that owed obligations to Plaintiff, pursuant to Policy No. 250B00781, which names Plaintiff as an additional insured.

66.     At the time of Mr. Ramos' injury, Plaintiff was an "additional insured" within the terms of the aforesaid policy.

67.     Upon information and belief, the policy contained a provision for the payment of personal injury, up to the sum of One Million Dollars ($1,000,000.00) and defense of Plaintiff in the Ramos action. *See* **Exhibit 13**.

68.     Burlington has been notified of ADB's claim for damages. In addition, Burlington is aware of ADB's claim for indemnification. Burlington has failed, refused, and continues to fail to honor its policy with Plaintiff.

69.     Burlington is liable for the value of injuries to Mr. Ramos caused by Denca's negligent actions to the amount of the policy limits.

70.     The insurance policy required Burlington to provide personal injury coverage up to and including the coverage policy limits.

71.     Plaintiff demanded payment from Burlington under the general liability policy on August 29, 2025, but Burlington has refused and continues to fail to honor ADB's claims, despite having a reasonable time to do so. Such refusal is in conflict with the provisions of the policy and is without reasonable cause or excuse and is therefore vexatious.

72.     Burlington's failure, refusal, and delay in making payment to Plaintiff pursuant to the policy provisions is vexatious in nature to the extent to justify and cause an award of

additional amounts to the Plaintiff for the delay and refusal and for the attorney's fees related to this action pursuant to the provisions of MO. REV. STAT. §375.296 and §375.420.

73.    Burlington has breached its contract of insurance in that it has not paid the full value of ADB's covered damage up to its policy limits and by denying ADB's claim.

74.    Plaintiff has satisfied the conditions required under the Policy, but Burlington has nonetheless vexatiously and unreasonably refused to honor its respective contract, instead choosing to breach it in order to avoid having to make payments.

75.    Burlington failed to adopt and implement reasonable standards for a prompt and adequate investigation of claims arising under its policy.

76.    Burlington failed to provide promptly a reasonable or just explanation, in relation to the facts or applicable law, for the denial, underpayment, or undervaluation of ADB's claim.

77.    Burlington refused to pay the full value of the claim without conducting a reasonable and adequate investigation with respect to the claim.

78.    Burlington committed the forgoing acts with actual knowledge of the falsity, unfairness, or deception of the foregoing acts and practices.

79.    Burlington delayed payment of ADB's claim after due demand without substantial justification or a legitimate reason and continues to do so.

80.    Burlington has refused to pay for a period of thirty days after due demand prior to the institution of this action to make payment under the terms and provisions of the insurance policy.

81.    Burlington failed to attempt to effectuate a prompt, fair, and equitable settlement of a claim without a reasonable cause or excuse and Burlington's refusal to pay the claimed

loss is without reasonable cause or excuse. Burlington's failure and refusal are vexatious within the meaning of MO. REV. STAT. §375.296 and other applicable statutes.

82.     Burlington is obligated to pay ADB's damages and costs of defense as a result of the Mr. Ramos incident.

83.     Burlington is obligated to follow and conform to MO. REV. STAT. §375.1007, and Burlington failed to do so.

84.     Burlington's actions in failing to comply with MO. REV. STAT. §375.1007 were done with conscious disregard for this statute and law, and without reasonable cause or excuse.

85.      Burlington's refusal and continued refusal to pay or make a reasonable offer to pay ADB's claim is without reasonable cause or excuse.

86.     Burlington's refusal and continued refusal to reasonably investigate the nature and extent of ADB's damages is without reasonable cause and excuse.

87.     Burlington unreasonably delayed evaluating and offering settlement to Plaintiff and wrongfully denied the claim.

88.     Burlington misinterpreted its own Policy and/or the law concerning ADB's claim.

89.     Plaintiff is entitled to prejudgment interest from the date said claim was wrongfully denied, as well as attorney's fees and all statutory penalties available under the law for Burlington's vexatious refusal and intentionally and knowingly denying ADB's claim wrongfully, knowing that the claim was valid and should have been paid per the Policy and the law.

90.     As a result of the damages caused by Denca, ADB paid settlement and defense costs totaling $245,917.37 in the Ramos matter.

91. In addition, ADB's is continuing to incur attorney's fees to effect recovery in this matter.

92. As a direct and proximate result of Burlington's vexatious actions as aforesaid, Plaintiff has suffered damages in an amount to be proven at trial. In addition, Plaintiff has incurred and will continue to incur attorneys' fees and costs as a result of Burlington's breach of contract.

## COUNT V: BREACH OF CONTRACT (AGAINST FEDERATED MUTUAL)

93. Plaintiff re-alleges and incorporates by reference the allegations above, in relevant part, as set forth fully herein.

94. Federated Mutual agreed to provide insurance to Denca and Plaintiff, as an additional insured, in exchange for payment of money under a commercial general liability policy, Policy No. 1884083.

95. On August 29, 2025, Plaintiff demanded that Federated Mutual indemnify it for the damages caused by its insured Denca's negligent actions in the Lumen Claim, as described above.

96. Federated Mutual failed or refused to pay ADB's covered loss and/or indemnify Plaintiff in accordance with the Policy, each of which constitutes a breach of contract.

97. Federated Mutual has breached Policy No. 1884083 by:

a. Failing and refusing to indemnify and reimburse Plaintiff for its damages incurred as a result of Denca's negligent actions in the Lumen Claim as aforesaid;

15

98.    As a result of the damages caused by Denca, Plaintiff has incurred costs and expenses in the amount of $130,859.74, which includes paying Via Technologies $8,787.60 to remove damaged fiber, *see* **Exhibit 9,** paying Riggs $14,905.00 to install replacement fiber, *see* **Exhibit 10,** providing Lumen with a $52,190.00 new fiber credit and $12,039.51 for railroad flagging fee credit, *see* **Exhibit 11**, and paying additional internal costs of $42,937.63. *See* **Exhibit 12**.

99.    As a direct and proximate result of Federated Mutual's breach of contract as aforesaid, Plaintiff has suffered damages in an amount to be proven at trial. In addition, Plaintiff has incurred and will continue to incur attorneys' fees and costs as a result of Federated Mutual's breach of contract.

## COUNT IV: VEXATIOUS REFUSAL (AGAINST FEDERATED)

100.    Plaintiff re-alleges and incorporates by reference the allegations above, as set forth fully herein.

101.    At all pertinent times, Federated Mutual was a general liability insurer that owed obligations to Plaintiff, pursuant to Policy No. 1884083, which names Plaintiff as an additional insured.

102.    At the time of Denca's negligent actions in the Lumen Claim, Plaintiff was an "additional insured" within the terms of the aforesaid policy.

103.    Upon information and belief, the policy contained a provision for the payment of damages from commercial general liability, up to the sum of One Million Dollars ($1,000,000.00). *See* **Exhibit 14**.

16

104.   Federated Mutual has been notified of ADB's claim for damages. In addition, Federated Mutual is aware of ADB's claim for indemnification. Federated Mutual has failed, refused, and continues to fail to honor its policy with Plaintiff.

105.   Federated Mutual is liable for the value of damages caused by Denca's negligent actions to the amount of the policy limits.

106.   The insurance policy required Federated Mutual to provide damages from general liability up to and including the coverage policy limits.

107.   Plaintiff demanded payment from Federated under the general liability policy on August 29, 2025, but Federated has refused and continues to fail to honor ADB's claims, despite having a reasonable time to do so. Such refusal is in conflict with the provisions of the policy and is without reasonable cause or excuse and is therefore vexatious.

108.   Federated Mutual's failure, refusal, and delay in making payment to Plaintiff pursuant to the policy provisions is vexatious in nature to the extent to justify and cause an award of additional amounts to the Plaintiff for the delay and refusal and for the attorney's fees related to this action pursuant to the provisions of Mo. Rev. Stat. §375.296 and §375.420.

109.   Federated Mutual has breached its contract of insurance in that it has not paid the full value of ADB's covered damage up to its policy limits and by denying ADB's claim.

110.   Plaintiff has satisfied the conditions required under the Policy, but Federated Mutual has nonetheless vexatiously and unreasonably refused to honor its respective contract, instead choosing to breach it in order to avoid having to make payments.

17

111.    Federated Mutual failed to adopt and implement reasonable standards for a prompt and adequate investigation of claims arising under its policy.

112.    Federated Mutual failed to provide promptly a reasonable or just explanation, in relation to the facts or applicable law, for the denial, underpayment, or undervaluation of ADB's claim.

113.    Federated Mutual refused to pay the full value of the claim without conducting a reasonable and adequate investigation with respect to the claim.

114.    Federated Mutual committed the forgoing acts with actual knowledge of the falsity, unfairness, or deception of the foregoing acts and practices.

115.    Federated Mutual delayed payment of ADB's claim after due demand without substantial justification or a legitimate reason and continues to do so.

116.    Federated Mutual has refused to pay for a period of thirty days after due demand prior to the institution of this action to make payment under the terms and provisions of the insurance policy.

117.    Federated Mutual failed to attempt to effectuate a prompt, fair, and equitable settlement of a claim without a reasonable cause or excuse and Federated Mutual's refusal to pay the claimed loss is without reasonable cause or excuse. Federated Mutual's failure and refusal are vexatious within the meaning of Mo. Rev. Stat. §375.296 and other applicable statutes.

118.    Federated Mutual is obligated to pay ADB's damages and costs of defense as a result of Denca's negligent actions in the Lumen Claim.

119.   Federated Mutual is obligated to follow and conform to Mo. Rev. Stat. §375.1007, and Federated Mutual failed to do so.

120.   Federated Mutual's actions in failing to comply with Mo. Rev. Stat. §375.1007 were done with conscious disregard for this statute and law, and without reasonable cause or excuse.

121.   Federated Mutal's refusal and continued refusal to pay or make a reasonable offer to pay ADB's claim is without reasonable cause or excuse.

122.   Federated Mutual's refusal and continued refusal to reasonably investigate the nature and extent of ADB's damages is without reasonable cause and excuse.

123.   Federated Mutual unreasonably delayed evaluating and offering settlement to ADB and wrongfully denied the claim.

124.   Federated Mutual misinterpreted its own Policy and/or the law concerning ADB's claim.

125.   ADB is entitled to prejudgment interest from the date said claim was wrongfully denied, as well as attorney's fees and all statutory penalties available under the law for Federated Mutual's vexatious refusal and intentionally and knowingly denying ADB's claim wrongfully, knowing that the claim was valid and should have been paid per the Policy and the law.

126.   As a result of the damages caused by Denca's negligent actions, ADB paid an amount totaling $130,859.74.

127.   In addition, ADB continues to incur attorneys' fees to effect recovery in this matter.

19

128.    As a direct and proximate result of Federated Mutual's vexatious actions as aforesaid, ADB has suffered damages in an amount to be proven at trial. In addition, ADB has incurred and will continue to incur attorneys' fees and costs as a result of Federated Mutual's breach of contract.

WHEREFORE, Plaintiff ADB Companies, Inc. prays for entry of judgment against Defendants in the amount of its actual damages to be proven at trial and well in excess of $25,000.00, plus all remedies and amounts provided by MO. REV. STAT. § 375.420, its reasonable attorneys' fees and costs incurred herein, pre-judgment and post-judgment interest, and for such other and further relief as the Court deems just and proper.

Respectfully Submitted,

THE COOK GROUP, PLLC

*/s/ John Beseau*
John Beseau, #56704MO
701 Market St., Suite 1225
St. Louis, MO 63101
Phone: (314) 882-9869
jbeseau@cookgrouplegal.com

ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I hereby certify that this document was filed electronically with the Clerk of the Court using the CM/ECF system on this 16th day of April 2026. The foregoing document is available for viewing and downloading from the CM/ECF system and was served upon all counsel of record via the CM/ECF system.

*/s/ John G. Beseau*

20